UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 16-cv-20924-MARTINEZ/GOODMAN

DONNA INCARDONE, *et al.*,

      Plaintiffs,

vs.

ROYAL CARIBBEAN CRUISES, LTD.,

      Defendant.

_____/

### DEFENDANT'S COMBINED RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS AND CROSS-MOTION FOR SANCTIONS

      Defendant Royal Caribbean Cruises, Ltd. ("Royal Caribbean") responds to Plaintiffs' motion for sanctions, moves for sanctions under 28 U.S.C. §1927,[1] and states:

### Introduction

      Plaintiffs' sanctions motion is frivolous. They laid in wait for the eve of the previous trial setting to file this motion in a transparent attempt to "poison the well" against Royal Caribbean. Their motion is procedurally, as well as substantively, baseless. Plaintiffs have combined a request for Rule 11 sanctions, discovery sanctions, and inherent power sanctions without detailing which is appropriate for the various grievances they have levied against Royal Caribbean. Plaintiffs seek sanctions for motions that were already ruled on and ones they never claimed were frivolous when filed. Further, Plaintiffs seek sanctions for discovery disputes that have already been adjudicated by Magistrate Judge Goodman, many of which occurred years in the past and well outside this Court's 30-day time limit to raise discovery disputes as outlined in the Local Rules. The baselessness of Plaintiffs' motion is confirmed by the fact they only seek to have Royal Caribbean's answer stricken and for a punitive financial penalty. They do not seek any sanctions tailored or rationally related to trial. Plaintiffs' sanctions motion would not have been fully briefed until after the previous trial period began.

---

[1] Royal Caribbean will be filing this combined response/motion separately on CM/ECF for ease of reference and review by this Court. Both filings will be identical.

Plaintiffs should be sanctioned for filing their motion. The motion was obviously filed to interrupt Royal Caribbean's trial preparations and to portray Royal Caribbean in a negative light right before trial. They have unreasonably and vexatiously multiplied the proceedings and should be sanctioned as a result.

### Memorandum of Law

**A.      Plaintiff's motion is procedurally improper for multiple reasons.**

Motions for sanctions themselves are subject to Rule 11 and the potential for sanctions. *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 851 F. Supp. 1299, 1323 (S.D. Fla. 2011). First, Plaintiffs' motion is untimely. Parties are supposed to take "early action," not delay serving their sanctions motion until the "conclusion of the case." *Ridder v. City of Springfield*, 109 F.3d 288, 295 (6th Cir. 1997) (citing Rule 11 Advisory Committee Notes). A Rule 11 motion should be "served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely." *Peer v. Lewis*, 606 F.3d 1306, 1313 (11th Cir. 2010). If the court already ruled on the allegedly offending paper, a party cannot thereafter seek Rule 11 sanctions. *Id*. "Any argument to the contrary renders the safe harbor provision a mere formality." *Gwynn v. Walker*, 532 F.3d 1304, 1309 (11th Cir. 2008). Plaintiffs waited until the last minute to file their Rule 11 motion.

Second, Plaintiffs have impermissibly combined a request for Rule 11 sanctions with discovery sanctions. "A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." FED. R. CIV. P. 11(c)(2). The Eleventh Circuit has never held that a Rule 11 motion can be combined with other requests for sanctions. *Kaplan v. Burrows*, 2011 WL 5358180 (M.D. Fla. Sept. 6, 2011) (surveying caselaw).[2] Indeed, Rule 11 specifically "does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37." FED. R. CIV. P. 11(d). Despite this, Plaintiffs motion seeks sanctions for a host of reasons, but none of it is explained or delineated. It is unclear what issues they claim are Rule 11 worthy and which are discovery violations. Indeed, the Rule 11 safe harbor provisions are pointless for discovery violations; there is nothing that can be withdrawn or cured at this point. The Rule is intended for parties to keep discovery issues separate from Rule 11 motions.

---

[2] Certain courts have allowed a Rule 11 motion to be combined with a request for attorneys' fees under 28 U.S.C. §1927 for the same alleged conduct. *Ridder v. Springfield*, 109 F.3d 288, 294 (6th Cir. 1996). Plaintiffs did not assert entitlement to fees here based on section 1927.

**B.      Plaintiffs' motion is substantively baseless.**

Plaintiffs' motion is substantively baseless as well. Royal Caribbean litigated this case reasonably and in good faith. Plaintiffs seek sanctions under Rule 11, Rule 37, and the Court's inherent authority. There is no basis for sanctions under any of the provisions Plaintiffs rely upon.

"The objective standard for testing conduct under Rule 11 is 'reasonableness under the circumstances' and 'what was reasonable to believe at the time' the pleading was submitted." *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998). "The reasonableness of the conduct involved is to be viewed at the time counsel or the party signed the document alleged to be the basis of the Rule 11 sanction." *Sussman v. Salem, Saxon & Nielsen, P.A.*, 150 F.R.D. 209, 213 (M.D. Fla. 1993). "Rule 11 sanctions are warranted when a party files a pleading that (1) has no reasonable factual basis; (2) is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) is filed in bad faith for an improper purpose." *Id*.

Turning to the other bases for sanctions, "[t]he key to unlocking a court's inherent power is a finding of bad faith." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998). Similarly, under Rule 37, "[t]he decision to dismiss a claim or enter default judgment 'ought to be a last resort—ordered only if noncompliance with discovery orders is due to willful or bad faith disregard for those orders." *United States v. Certain Real Property Located at Route 1, Bryant, Ala.*, 126 F.3d 1314, 1317 (11th Cir. 1997) (quoting *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1556 (11th Cir. 1986)). Rule 37 sanctions are particularly inappropriate in situations where there is no court order compelling the discovery in the first place. *See id*. "The severe sanction of a dismissal or default judgment is appropriate only as a last resort, when less drastic sanctions would not ensure compliance with the court's orders." *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1542 (11th Cir. 1993) (citing *Navarro v. Cohan*, 856 F.2d 141, 142 (11th Cir. 1988)).

**1.      Royal Caribbean's affirmative defenses were properly asserted.**

The issue with the affirmative defenses was already raised before Magistrate Judge Goodman during a May 5, 2017, discovery hearing wherein Plaintiffs sought to compel better answers to interrogatories regarding affirmative defenses. The Court stated that Royal Caribbean's affirmative defenses were typical as the defendant is "covering their bases." [ECF No. 85 p. 22]. Indeed, the Court stated that "I'm not faulting you for raising comparative

3

negligence as a[n] affirmative defense. I'm not faulting you for raising it, even though you don't yet have the facts. It's typical for a defendant to raise that as an affirmative defense and learn the facts later. And if the facts later don't support it you will either drop it or you won't have any facts to support it at trial." [*Id*. p. 25]. Plaintiffs have decided to file a Rule 11 motion nearly two years later.

Magistrate Judge Goodman then suggested that Royal Caribbean respond to Plaintiffs' interrogatories by stating "[a]t present, comma, defendant has no facts to specifically support the affirmative defense but we intend to pursue discovery in an effort to obtain facts to support this defense" which is essentially how Royal Caribbean subsequent responded to Plaintiffs' affirmative defense interrogatories. [*Id*. p. 26].

It is unclear whether Plaintiffs consider Royal Caribbean's affirmative defenses to be improperly asserted, non-meritorious, or some combination of the two. First, Royal Caribbean's affirmative defenses are sufficiently alleged and do not need to contain additional factual detail. "The appropriate pleading standard for affirmative defenses is, at present, an unsolved mystery in the post-*Twombly/Iqbal* world." *E.E.O.C. v. Joe Ryan Enters., Inc.*, 281 F.R.D. 660, 662 (M.D. Ala. July 9, 2012). Numerous courts have held that the *Twombly/Iqbal* factual plausibility pleading standard does not apply to affirmative defenses. *Id*. This Court is specifically one of them. In *Decarlo v. McKinnon*, 2013 WL 12077796 (S.D. Fla. Nov. 19, 2013), this Court determined "the heightened pleading standard of *Twombly* and *Iqbal* [is] inapplicable to affirmative defenses." *Id*. at *2. Rule 8 requires defendants to "state" their defenses whereas a plaintiff is required to "show[ ] that the pleader is entitled to relief[.]" The lack of "showing" language in relation to affirmative defenses is significant. *Id*. "Only where it appears that the Defendant cannot succeed under any set of facts which it could prove will an affirmative defense be held insufficient as a matter of law." *Id*. Further, it is unfair to require a defendant plead its affirmative defenses with the same factual detail since the defendant is under time constraints to respond to the plaintiff's complaint. *Joe Ryan*, 281 F.R.D. at 665 n.2.

Second, Plaintiffs are on fair notice of Royal Caribbean's affirmative defenses. *Kaye v. Personal Injury Funding III, LP*, 2010 WL 2244085 (S.D. Fla. May 12, 2010), is instructive. A party sought Rule 11 sanctions based on the filing of what it considered to be frivolous affirmative defenses. In denying the sanctions motion, the court noted that Rule 11's Advisory Committee Notes stated that motions under the Rule "should not be employed as a discovery

device or to test the legal sufficiency of efficacy of allegations in the pleadings; other motions are available for those purposes. Nor should Rule 11 motions be prepared to emphasize the merits of a party's position[.]" *Id*. (citing Rule 11 Advisory Committee Notes). The plaintiff's Rule 11 motion was essentially "either a Rule 12 motion for judgment on the pleadings, or an unsupported Rule 56 motion for summary judgment." *Id*. Rule 11 sanctions would have been improper.

Plaintiffs' motion only contends that affirmative defenses 42 and 43, comparative negligence, affirmative defense 45, discharge of duty to warn, and affirmative defense 53, open and obvious are problematic. Defenses 45 and 53 are essentially denials of Plaintiffs' claims. Affirmative defenses that do not admit the essential facts of the complaint can simply be treated as specific denials. *Warren v. Delvista Towers Condo. Ass'n, Inc.*, 2014 WL 12802867 (S.D. Fla. June 30, 2014). Tellingly, Plaintiffs do not challenge any of Royal Caribbean's other affirmative defenses, such as aggravation of a preexisting injury, failure to mitigate their damages, and payment from collateral sources. Plaintiffs are clearly on notice of those defenses. The facts are completely in their possession, and they have, like Royal Caribbean's other defenses, been tried and litigated by consent throughout this case. Affirmative defenses need only "give Plaintiffs fair notice of each defense sufficient to allow Plaintiffs to undertake discovery and prepare for trial, which is all that is required under the applicable notice pleading standard." *Herman v. Seaworld Parks & Enter., Inc.*, 2015 WL 12859432, *3 (M.D. Fla. June 16, 2015).

In reality, Plaintiffs are using this motion as a motion for summary judgment on comparative negligence which they never filed. Rule 11 sanctions are completely inappropriate.

**2.      Plaintiffs' issues with the ticket contracts are unfounded.**

Plaintiffs contend that Royal Caribbean has falsely claimed there are "signed" ticket contracts for each of the various Plaintiffs when these do not exist. This is at the same time as alleging in their complaint that there are valid ticket contracts. Plaintiffs alleged that "[s]uit is filed in this Court due to the forum selection clause in the passenger contract ticket issued by Defendant which requires any lawsuit to be filed in the District Court of the Southern District of Florida." [ECF No. 30 ¶13]. It is an electronic ticket confirmation process; passengers do not actually "put pen to paper" at the port on a physical ticket contract before boarding the vessel. Plaintiffs' contention is completely frivolous.

Plaintiffs originally filed this as a class action. Royal Caribbean moved to dismiss, among other reasons, based on the terms of a class action waiver provision in the party's ticket contract, *i.e.*, the terms and conditions governing their cruise vacation. [ECF No. 9-1]. Cruise ticket contracts are routinely enforced. *Caron v. NCL (Bahamas) Ltd.*, 910 F.3d 1359 (11th Cir. 2018). Their terms and conditions need only be reasonably communicated to passengers through their physical characteristics and the passenger's opportunity to become meaningfully informed of the contract's terms. *Id.* (citing *Estate of Myhra v. Royal Caribbean Cruises, Ltd.*, 695 F.3d 1233, 1235 n.1 (11th Cir. 2012) (abrogated on other grounds)). As part of that briefing, Royal Caribbean submitted all the electronic ticket booklets for Plaintiffs along with the electronic authorization receipts for when the ticket contracts were accepted. [ECF No. 9-1 p. 126-154]. Royal Caribbean resubmitted those documents in response to Plaintiff's motion for class certification, rearguing that the class action waiver barred Plaintiffs' class action. Plaintiffs withdrew their motion for class certification in the face of that response.

Further, Michael Sobbell, the founder of Autism on the Seas and the special-needs travel agent that arranged Plaintiffs' cruises, averred that he instructed Plaintiffs to complete their own online check-in, including the ticket contract. [ECF No. 39-6]. He provided the Plaintiffs with the electronic information to complete their own online check-in themselves. He stated that Plaintiffs completed the online check-in process along with accepting the electronic ticket contract. [ECF No. 39-6]. His affidavit contained the emails that he forwarded to the Plaintiff-families showing them that online check-in was something that they still needed to complete. [*Id.*].

Plaintiffs have the electronic ticket contract booklets, the electronic authorization form, and the emails from Sobbell to Plaintiffs telling them to go complete their online check-in including the ticket contract. This was the ticket contract and the evidence of their acceptance of same. Passengers do not sign physical tickets, but are still bound by the ticket contract.

### 3.    Plaintiffs' complaints regarding discovery violations are baseless.

Royal Caribbean preserved closed-circuit television ("CCTV") and the voyage data recording system ("VDR") following this cruise, and produced same to Plaintiffs in this lawsuit. Plaintiffs are simply rehashing their previous spoliations motion. It is unclear whether they contend this is a Rule 11 violation, Rule 37 violation, both, or something else.

Plaintiffs take issue with the VDR although the information Royal Caribbean had was produced to Plaintiffs. Royal Caribbean produced the same VDR transcript in its possession to Plaintiffs. [January 26, 2018 Letter, attached as Exhibit 1]. The VDR is essentially the ship's "black box." The VDR system collects data from various sensors onboard the vessel then stores the information in an externally-mounted protective storage unit designed to withstand any type of marine incident. The VDR is not monitored. [ECF No. 276-4 (Depo. 11)]. The VDR is not an investigative tool and is not used for investigative purposes. [ECF No. 276-4 (Depo. 12)]. The VDR is useful in case of the total loss of a vessel. [ECF No. 276-4 (Depo. 12)]. The device is not user-friendly and is not easy to extract data from. [ECF No. 276-4 (Depo. 12)].

The VDR was preserved and saved after the cruise, but, for unexplained reasons, Royal Caribbean could only extract certain portions of voice recordings from the VDR. [ECF No. 276-4 (Depo. 30-31)]. The only readable data was portions of the voice recording. [ECF No. 276-4 (Depo. 31)]. Royal Caribbean's personnel spent weeks trying to recover additional data from the VDR, but were unsuccessful in doing so. [ECF No. 276-4 (Depo. p. 31)]. Royal Caribbean enlisted the help of the VDR's manufacturer, SAM Electronics, but that company could not recover any additional data either. [ECF No. 276-4 (Depo. 32)]. As far as Royal Caribbean is aware, there are no companies that periodically check or audit VDR performance. [ECF No. 276-4 (Depo. 55)].

Further, counsel for Royal Caribbean sought to put Plaintiffs' counsel in touch with the manufacturer to see if they could potentially extract more information from the VDR or maybe fix the issues with the VDR. This occurred during a November 2017 transcribed Rule 7.1 conferral conference on discovery issues. [ECF No. 276-2 (Depo. 23)]. Plaintiffs' counsel never took Royal Caribbean's counsel up on its offer, and as far as Royal Caribbean is aware, Plaintiffs made no effort to try and extract additional data from the VDR.

Turning to the CCTV, a separate system from the VDR, Royal Caribbean produced multiple clips totaling nearly 30 minutes to Plaintiffs. [ECF No. 276-3 (Depo. 55)]. Plaintiff contends that CCTV footage would have shown the ship experiencing the high winds and waves. This is exactly the footage that was produced to Plaintiffs and exactly what it shows. The footage depicts the ship's bow being struck by waves, the ship's exterior being buffeted by high winds, and portions of the ship's exterior sustaining damage as a result of the winds and waves. Much of the footage is dramatic. Despite this, Plaintiffs contend that Royal Caribbean should have

preserved every minute of footage from every camera on the ship for the entire cruise.

There was no decision to preserve "all" CCTV on the vessel; Plaintiffs seriously misconstrue the deposition testimony from the captain and Royal Caribbean employees. There is no missing CCTV that Plaintiffs do not possess. No Plaintiff was physically injured as a result of this cruise, and there was no discrete "incident" to preserve CCTV for. CCTV is preserved by the security department. [ECF No. 276-3 (Depo. 44)]. Security is instructed to secure relevant CCTV footage. [ECF No. 276-4 (Depo. 45)]. The captain was not aware whether every piece of data was fully captured. [ECF No. 276-3 (Depo. 51)]. And the CCTV does not record audio. [ECF No. 276-3 (Depo. 56)].

Footage the Captain reviewed is the same footage that was provided to Plaintiffs. Captain Andersen testified that he watched CCTV of wave heights from the waves hitting the bow of the vessel. [ECF No. 276-1 (Depo. 113-14)]. He said he saw "just short video clips" a "few minutes" long. [ECF No. 276-1 (Depo. 115)]. Gerry Ellis, Royal Caribbean's former director of maritime safety, similarly testified he only reviewed "footage of the center images of the waves over the bow, hitting the windows." [ECF No. 276-4 (Depo. 44)]. He testified that the entire CCTV from the ship would not have been preserved because it is "a huge amount of data." [ECF No. 276-4 (Depo. 44)]. Plaintiffs have the relevant CCTV.

Litigants do not have a duty to preserve any and all evidence, but only that which is potentially relevant. *Point Blank Solutions, Inc. v. Toyobo Am., Inc.*, 2011 WL 1456029, *12 (S.D. Fla. Apr. 5, 2011). Spoliation is the intentional destruction, mutilation, alteration, or concealment of such evidence. *Walter v. Carnival Corp.*, 2010 WL 2927962, *2 (S.D. Fla. July 23, 2010). The party seeking a spoliation sanction must prove: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed, (2) that the records were destroyed with a culpable state of mind, and (3) that the destroyed evidence was crucial to the party's claim or defense. *Id*.

In the Eleventh Circuit, the party seeking sanctions based on spoliation of evidence must additionally demonstrate bad faith on the part of the litigant that failed to preserve the evidence. *Point Blank Solutions, Inc. v. Toyobo Am., Inc.*, 2011 WL 1456029, *1 (S.D. Fla. Apr. 15, 2011). Unlike some other circuits, evidence tending to show ordinary negligence, gross negligence, or willful misconduct short of bad faith in the spoliation of evidence is insufficient to allow an adverse inference in the Eleventh Circuit.  *See id*. Bad faith is found where the party purposefully

loses, tampers, or destroys relevant evidence. *Walter v. Carnival Corp.*, 2010 WL 2927962 (S.D. Fla. July 23, 2010).

If direct evidence of bad faith is unavailable, the following constitutes circumstantial evidence of bad faith: "(1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator." *Managed Care*, 736 F. Supp. 2d at 1323 (quoting *Walter*, 2010 WL 2927962 at *2). In the Eleventh Circuit, "bad faith may be found on circumstantial evidence where all of the [four] hallmarks are present[.]" *Calixto v. Watson Bowman Acme Corp.*, 2008 WL 3823390, *16 (S.D. Fla. Nov. 16, 2009). One of the requirements for a finding of circumstantial bad faith is that the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator. *See Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, 736 F. Supp.2d 1317, 1323 (S.D. Fla. 2010). Generally, destruction of evidence under routine procedures does not indicate bad faith. *See, e.g., Vick,* 514 F.2d at 737. Additionally, courts applying Florida law have held that systematic and routine elimination of electronic data in the ordinary course does not constitute bad faith. *See, e.g., Managed Care,* 736 F. Supp. 2d at 1322.

This case is similar to *Mitchell v. Royal Caribbean Cruises, Ltd.*, 2013 WL 12066018 (S.D. Fla. May 7, 2013), where spoliation sanctions were denied. The *Mitchell* passenger tripped on a gangway leading off the cruise ship. She contended that the cruise line spoliated surveillance footage by only preserving the portion of the tape involving her specific accident. *Id*. at *1. The remainder of the video from that day and from the rest of the cruise was recorded over as per the cruise line's retention policy. *Id*. The passenger claimed that the cruise line should have retained footage from the gangway for the entire day of her fall. *Id*. She argued this was relevant to establish prior notice of an issue with the gangway and would allow her to rebut the cruise line's potential argument that thousands of other passengers walked on the gangway without issue. *Id*.

The court denied that spoliation occurred or that sanctions were appropriate. *Id*. at *2. It held there was no authority for the proposition a cruise line had to preserve an entire day's worth

of CCTV footage, an assumption it deemed "a rather dubious one in most cases." *Id*. There was no evidence that the cruise line acted with a culpable state of mind where it already preserved a relevant segment of the CCTV for the passenger in litigation. *Id*. And the passenger could not show how the added footage would have been crucial to her case or that she was unfairly prejudiced as a result. *Id*.; *see also Rowe v. Albertson's, Inc.*, 178 F. App'x 859, 861 (10th Cir. 2006) (denying spoliation sanctions where recycled videotape did not show patron's fall or the liquid on the floor).

Plaintiffs cannot prove that Royal Caribbean even had a duty to preserve additional CCTV. Royal Caribbean preserved footage of the winds and waves impacting the ship during the storm; the footage Plaintiffs would presumably want to use at trial. Plaintiffs have this CCTV. Plaintiffs and the other passengers were ordered to their cabins during the height of the storm. There is no CCTV in each room with Plaintiffs so there is no footage showing each of the Plaintiffs. This is not like a slip-and-fall case where there is a discrete and isolated incident that could be captured on CCTV. And there was no reason for Royal Caribbean to preserve CCTV from all over the ship not showing the Plaintiffs or the storm conditions. This footage was irrelevant. Further, Plaintiffs notified Royal Caribbean of the potential for this lawsuit on March 7, 2016, a month after the cruise. Their letter did not ask to preserve any specific piece of evidence. [Representation Letter, attached as Exhibit 2]. The onus was on Royal Caribbean to decide to preserve the evidence it deemed relevant. The CCTV footage that Royal Caribbean preserved is representative of the storm and the cruise; there was no reason to preserve all footage from the ship. This is the antithesis of bad faith.

There is zero evidence of bad faith on Royal Caribbean's part regarding either the CCTV or the VDR. Royal Caribbean preserved the VDR following the incident. Unfortunately, the data could not be extracted beyond a few segments of voice recordings. This was not on purpose and was no one's fault. Royal Caribbean tried to extract the data from the device over the course of weeks along with the manufacturer, but could not get additional data. Royal Caribbean tried to put Plaintiffs in touch with the VDR's manufacturer although they chose not to accept the offer. This conduct is the opposite of bad faith.

Similarly, there is no bad faith on Royal Caribbean's part regarding the CCTV. Again, no one was physically injured as a result of the cruise, and there were no specific accidents or incidents to capture. Royal Caribbean produced numerous CCTV video clips to Plaintiffs

showing the relevant wind, wave, and weather conditions during the storm. It is unclear why Royal Caribbean would have kept additional CCTV. Plaintiffs contend that all the CCTV from the over 200 cameras on the ship should have been turned over in discovery, totaling more than 14,400 hours of video. This confirms the ridiculousness of Plaintiffs' position. It would take one person nearly two years of continually watching CCTV footage to watch all the footage that Plaintiffs contend should have been produced in this case. Not only is all this CCTV irrelevant, but it is not feasible to store same since it is a huge amount of data. This was not proportional to the needs of the case.[3]

Plaintiffs' sanctions motion also fails because it does not explain how the VDR or more CCTV were crucial to their case. In meeting the requirement to demonstrate that the spoliated evidence was crucial to the movant's ability to prove its *prima facie* case or defense, it is not enough for the movant to show only that the spoliated evidence would have been relevant to a claim or defense. *See Managed Care*, 736 F. Supp.2d at 1327-28 (finding that the allegedly spoliated evidence was not crucial to the plaintiff's claims because it could still prove its case through other evidence already obtained elsewhere). Where the party can still prove its case through other, already-obtained evidence, the missing evidence is not crucial and spoliation sanctions are unwarranted. *Id.*

Plaintiffs claim that the data could have shown when the ship corrected or changed course or when certain meetings took place regarding the voyage and weather. In reality, Plaintiffs are claiming that this information may, in some way, impeach the Captain's deposition testimony. This is not remotely crucial to Plaintiffs' claims. First, the CCTV does not record audio, and the VDR was preserved although it was difficult to extract from. Second, Plaintiffs have already received all this information from other sources in discovery. Royal Caribbean provided Plaintiffs with a trove of information on the weather, the ship's course, projected course, and the meetings on the weather.

For example, Royal Caribbean produced Bon Voyage maps that show the ship's exact position and course overlayed onto the then-current weather forecast from the ship's computer system. Royal Caribbean produced the weather forecasts including the NOAA High Seas and Surface forecasts. It produced the deck and engineering logs showing the ship's precise location

---

[3] Upon information and belief, it would have cost Royal Caribbean over $1 million to try and preserve all CCTV from the entire ship for the entire cruise assuming the feasibility of the endeavor could be sorted out.

during the cruise. It produced the engine activity log. It produced the heavy weather log. Royal Caribbean produced the pre-departure checklist, a heavy weather checklist, and the voyage plan. It produced the master's hand-over notes. The captain was also deposed over the course of two days. Plaintiffs had the opportunity to take other depositions, but they chose not to. Plaintiffs could have designated a corporate representative to testify regarding the CCTV, VDR, or other discovery issues, but they failed to depose a corporate representative at all. Plaintiffs' claim that additional CCTV or the VDR are needed rings hollow. This evidence is not crucial to Plaintiffs' claims.

Plaintiffs' contention that Royal Caribbean failed to produce relevant weather forecast maps and maps relied on by Gerry Ellis is also misguided. Plaintiffs' motion claims that missing maps were produced during the parties' exhibit exchange on the eve of the March trial setting that had never previously been produced in discovery and pursuant to Court Orders. All of these maps were produced in November 2016, and January 2017, well-before the discovery hearings that occurred on this issue later in 2017. The only difference is that the Bates-stamping was changed on the documents, and this is the source of any confusion on Plaintiffs' part. The weather data itself is identical. Plaintiff has all the weather data and forecasts that Royal Caribbean does.

The "Ellis Documents" Bates stamping was an internal marking system used by Royal Caribbean that was explained at his deposition as an internal control Bates stamp. [ECF No. 276-4 (Depo. p. 25)]. Royal Caribbean produced all these documents and maps to Plaintiffs in early 2017, but with the Bates stamping it had been using in this case. When it came time to disclose exhibits, Royal Caribbean submitted these documents, but they then included the original "Ellis Documents" Bates stamping as well. While this led to confusion, the prior production and Royal Caribbean's trial exhibits are the same. [See Document Comparison, attached as Exhibit 3]. Royal Caribbean did not produce any new or additional maps on the eve of trial. They are the same documents previously produced, but including Royal Caribbean's internal Bates stamp numbering system. There was no failure to disclose these documents.

### 4.      Royal Caribbean did not withhold any witnesses.

Plaintiffs contend that Royal Caribbean was deceptive regarding the production of two particular witnesses: Staff Captain Wendy Williams and First Navigational Officer Kyriakos Spahis. Plaintiffs' contention is, again, unfounded. These depositions did not take place due to

factors outside Royal Caribbean's control and, in no small part, to Plaintiffs' own foot-dragging. Further, Plaintiffs sought to take these depositions nearly two years ago; their complaints now on the eve of trial are beyond tardy. This is confirmed by the fact that Plaintiffs' moved *in limine* to preclude either Williams or Spahis from testifying at trial. Royal Caribbean responded to that motion by stating that it did not plan on call either witness at trial. [ECF No. 294]. That should have been the end of the Williams and Spahis issue. Plaintiffs withdrew their motion *in limine* after serving their motion for sanctions. [ECF No. 332]. It is obvious that the withdrawal was done to "set up" this frivolous sanctions motion.

Williams was not on Royal Caribbean's Rule 26 disclosures as a witness it intended to use to support its defenses. [Initial Rule 26 Disclosures, attached as Exhibit 4]. Royal Caribbean provided Plaintiffs' counsel with her home address and contact information as part of the discovery process in response to their first set of interrogatories. [Supplemental Response to Interrogatory 1, attached as Exhibit 5]. In April 2017, Plaintiffs unilaterally set Williams for deposition in June to occur in Miami at Plaintiffs' counsel's office. Williams was on contract in Spain at the time. Royal Caribbean's counsel informed Plaintiffs' counsel of the logistical challenges in coordinating numerous crewmember depositions around the world. [June 22, 2017, email, attached as Exhibit 6]. Notwithstanding, Royal Caribbean sought to provide Plaintiffs with Williams' deposition in Spain before her contract ended on September 10, 2017. Royal Caribbean provided Plaintiffs with dates in August for Williams' deposition near her home of Vancouver, Canada. [July 17, 2017, email attached as Exhibit 7].

The factors that led to Williams not being deposed were outside Royal Caribbean's control. It was impossible for it to produce her for deposition. Williams went on sabbatical to care for a terminally ill family member. Plaintiffs set the matter of her deposition for a discovery hearing, and Magistrate Judge Goodman ordered that Plaintiffs may take Williams' deposition on or before August 30, 2017, in either Spain or Vancouver, Canada.

Williams' deposition was mutually scheduled and coordinated to take placed August 12, 2017, in Vancouver. Thereafter, Williams retained private counsel and was not willing to voluntarily assist. [August 15, 2017, email, attached as Exhibit 8]. Counsel for Royal Caribbean provided the contact information for Williams' private attorney once she gave Royal Caribbean that information. [August 20, 2017, email, attached as Exhibit 9]. Plaintiffs did not follow up on the matter before the August 30th deadline. Following an October 2017 7.1 conference, Plaintiffs

unilaterally noticed Williams for deposition in November. Williams, while on sabbatical and still represented by her own counsel, subsequently resigned from the company.[4]  Plaintiffs never responded to questions from Royal Caribbean regarding whether it had served a subpoena on Williams. Plaintiffs took no further action to get Williams' deposition. It was not Royal Caribbean's fault the deposition did not occur.

Regarding Spahis, Plaintiffs unilaterally noticed him for deposition for the same day in June 2017 as the Williams deposition. [Notice of Taking Deposition, attached as Exhibit 10]. Like Williams, Spahis was not a witness that Royal Caribbean intended to use at trial to support its case. Magistrate Judge Goodman ordered his deposition may go forward by August 30, 2017. [ECF No. 97]. Royal Caribbean's counsel was in the process of arranging Spahis' deposition to occur in Europe. [ECF No. 339-1 p. 10-20]. Spahis was set to return to the *Anthem of the Seas* starting September 3, 2017. [August 15, 2017, email]. He abruptly resigned from Royal Caribbean, and it could not arrange for his deposition at that point. [August 20, 2017, email]. Royal Caribbean's counsel again provided Spahis' most recent contact information to Plaintiffs' counsel. [August 20, 2017, email]. Counsel for Royal Caribbean told Plaintiffs' counsel it had no problem with them contacting Spahis to arrange for his deposition. [Transcribed Rule 7.1 Conference p. 80-82, attached as Exhibit 11]. Plaintiffs' sanctions motion states they tried to contact him, but Spahis was at sea for the "foreseeable future." Plaintiffs' counsel attempt at contact was a single email. [Transcribed Rule 7.1 Conference, p. 81-82]. That was the last time Plaintiffs mentioned or tried to arrange for Spahis' deposition, over one year and a half ago.

Rule 37 sanctions are intended to be "just." *Id.* "Violation of a discovery order caused by simple negligence, misunderstanding, or inability to comply will not justify a Rule 37 default judgment or dismissal." *Id.* (citing *In re Chase & Sanborn Corp.*, 872 F.2d 397, 400 (11th Cir. 1989)). A case-dispositive sanction "is an extreme sanction that may be properly imposed only when: (1) a party engages in a clear pattern of delay or willful contempt (contumacious conduct); and (2) the district court specifically finds that lesser sanctions would not suffice." *Betty K Agencies, Ltd. v. M/V Monada*, 432 F.3d 1333, 1337-38 (11th Cir. 2005); *see United States v. Twenty-Nine Pre-Columbian*, 2014 WL 4655737 (S.D. Fla. Sept. 17, 2014) (denying dismissal sanctions for alleged failure to produce witnesses for deposition).

[4] After the death of her ailing relative, Williams was very recently hired by Celebrity Cruises as a Staff Captain. Celebrity Cruises is a sister cruise line to Royal Caribbean. Royal Caribbean does not intend to rehire her and does not intend to call her as a witness at trial.

Williams and Spahis were not deposed due to factors outside Royal Caribbean's control, and there is no clear pattern of bad faith conduct on Royal Caribbean's part. Royal Caribbean's crewmembers are either cruising on various ships around the world or home abroad when off contract. Williams was in Spain when Plaintiffs requested her deposition, and counsel informed Plaintiffs that it was trying to coordinate the deposition. Williams' deposition was scheduled but she went on leave to care for an ill relative, retained private counsel, and then resigned from the company. This is not a situation where Royal Caribbean refused to produce her for deposition in spite of a court order. Same with Spahis. He was off contract in Greece, and Royal Caribbean tried to arrange his deposition. Spahis abruptly resigned. Plaintiffs had their home contract information and never took advantage of it. Plaintiffs never served subpoenas[5] on these witnesses and never sought to employ any of the means available to them to get their depositions. The extreme sanction of dismissal, the only one Plaintiffs seek beside money, is unwarranted. *Twenty-Nine Pre-Columbian*, 2014 WL 4655737 at *3-4.

5.      **Royal Caribbean did not falsely provide a Rule 7.1 certification on its *Daubert* motions.**

Plaintiffs concede that Royal Caribbean reached out to them twice by telephone to confer regarding the initial *Daubert* motion. Plaintiffs flatly admit that they refused to confer on the *Daubert* motion unless counsel met in person and the meeting was transcribed by a court reporter. Local Rule 7.1 requires cooperation in good faith in attempting to resolve the dispute before filing any motions. It was obvious that Plaintiffs were being difficult for the sake of being difficult as a court reporter was completely unnecessary to discuss the *Daubert* motion in good faith. This was not a long laundry-list of pending discovery matters that the parties needed to memorialize and iron out. Plaintiffs unsurprisingly opposed Royal Caribbean's *Daubert* motion in full. Royal Caribbean attempted to confer in good faith, but was unable to do so. Its conferral certification states as much. Plaintiffs did not complain about the conferral in response to the *Daubert* motion which had been fully briefed. Plaintiffs never contended that the conferral certification was sanctionable until now well over a year later.

Royal Caribbean renewed that *Daubert* motion in accordance with this Court's then-recent scheduling order, which Plaintiff had already opposed with responsive briefing. In renewing its *Daubert* motion, Royal Caribbean raised the same arguments as well as some new

---

[5] Canada and Greece are both parties to the Hague Service Convention.

arguments against certain of Plaintiffs' experts, Lubit, Forman, and Fabricant. A Rule 7.1 certification was included in the renewed motion, although counsel for Royal Caribbean did not re-confer with Plaintiffs prior to filing the motion.

Plaintiffs claim this was a "fraud on the court," but it is unclear how so. Royal Caribbean attempted to confer on the original *Daubert* motion and had conferred with Plaintiffs throughout this litigation prior to filing motions and discovery issues. There was no reason to falsely claim the parties had conferred since it gave Royal Caribbean no benefit. Plaintiffs were surely going to oppose the motion anyway which they, of course, did. Indeed, Royal Caribbean did not state that its *Daubert* motion was unopposed or the parties had reached some agreement on the motion which may have caused the Court to grant same. It is obvious that the conferral issue was a pure oversight. And like the original *Daubert* motion, Plaintiffs did not raise the conferral issue until after this Court already ruled on the *Daubert* motions and recommended denying their own *Daubert* motion.[6] Rule 11 sanctions are procedurally and substantively without merit.

### 6. Royal Caribbean's argument as to Forman were proper.

Plaintiffs contend that because Forman met with most of the families after his first deposition, Royal Caribbean's *Daubert* motion as to him was frivolous. Forman's meetings were not the "smoking gun" that Plaintiffs portray them to be. Forman subsequently testified that he met with the families to get some basic information from them, but left the interpretation of their medical needs to Plaintiffs' other paid experts. He completely relied on Drs. Lubit and Hohn for the treatment that Plaintiffs may need. He did not substantively meet with the Plaintiffs.

Forman testified that the purpose of the meeting was essentially outside his role as an expert at all. Forman said he met with the parents "[b]ut it's more emotional support with the parent than it is to override the doctor or the therapist recommendations." [ECF No. 250-5 p. 57 (Forman Depo. p. 56)]. Forman just wanted "to be there for them to some degree. I know that sounds weird, but I've actually developed a good relationship with some of them." [*Id.*]. Forman still failed to conduct an independent analysis, instead relying only on Plaintiffs' other experts. Such opinions are improper and should be stricken. *Orthoflex, Inc. v. Thermotek, Inc.*, 986 F. Supp. 2d 776, 798 (N.D. Tex. 2013).

---

[6] Plaintiffs failed to confer on their *Daubert* motion, which was their pattern throughout this litigation. Further, this Court recommended substantively denying their *Daubert* motion as well.

This Court already ruled on the parties' competing *Daubert* motion where Plaintiffs made this argument, but never sought Rule 11 sanctions at the time. This Court denied that portion of Royal Caribbean's *Daubert* motion as to Forman. [ECF No. 279 p. 36]. This Court simply denied the *Daubert* motion as to Forman on its merits and did not consider any argument Royal Caribbean made to have been made in bad faith. Plaintiffs' after-the-fact Rule 11 motion is frivolous.

**7.    Royal Caribbean's Rule 7.3 certification was proper.**

Plaintiffs again seek untimely Rule 11 sanctions on a fully-briefed motion. Royal Caribbean's verification stated that it "agreed to withdraw some of its claimed fees described above." [ECF No. 327 p. 14]. Just one page above, Royal Caribbean "agrees to voluntarily withdraw some of the claimed entries." [*Id*. p. 13]. Royal Caribbean voluntarily withdrew certain of the claimed billing entries "in the interest of compromise[.]" [*Id*.]. Royal Caribbean did exactly what its Rule 7.3 certification stated. And the email attached to Plaintiff's motion for sanctions demonstrates an obvious attempt at compromise over the claimed fees. The certification was true and Royal Caribbean's efforts were in keeping with Rule 7.3's goal.

**8.    Royal Caribbean properly sought attorneys' fees in compliance with this Court's order.**

Plaintiffs contend that because the parties disagree over the scope of recoverable time as a result of Drs. Tiago and Whelley, one party (namely Royal Caribbean) must be committing fraud. This is absurd. Royal Caribbean's memorandum regarding the fee issue already explained why its claimed fees were connected and necessary in relation to Drs. Tiago and Whelley. Plaintiffs' sanction motion is an obvious attempt to try to get Royal Caribbean to withdraw any claim to fees that this Court has already ordered it entitled to relating to this discovery.

Plaintiffs believe time entries are only relevant if they expressly have the doctors names in them. This argument is not only specious, but it ignores the express language of the Court's Order, which states that "Plaintiff shall pay the defendant for all costs and attorney's fees arising from the involvement of the two originally named expert psychologists."

This fact is highlighted by Magistrate Judge Goodman's R&R:

> To complicate matters even further, Plaintiffs' vocational rehabilitation expert's opinion is based on the test results and examinations of the two psychologists who have not yet been substituted. RCCL has requested the opportunity to take the depositions of Plaintiffs' vocational rehabilitation expert again, after that expert

reviews the work done by the new experts. The Undersigned views this request as entirely reasonable and logical.

This example underscores the interconnectedness of Plaintiffs' experts, and explains why Royal Caribbean included the billing entries it did. Plaintiffs' experts worked together, and their work was relied upon by nearly every other expert the Plaintiffs retained. In most cases, their work formed the bases for Plaintiffs' other experts' reports. Adding new psychiatric experts had a cascading effect on other discovery issues in the case, particularly relating to Plaintiffs' other experts and the continuance of the trial. All these time entries are patently reasonable. Further, Plaintiffs contend that many entries are too vague and not specific. Again, Plaintiffs are essentially challenging any time entry that does not directly and expressly refer to either Dr. Tiago or Dr. Whelley by name. Courts should only discount time entries that are "overly vague." *Wendel v. USAA Cas. Ins. Co.*, 2009 WL 1971451, *3-4 (M.D. Fla. July 8, 2009) (repeated description "receive and review facsimile" too vague). This does not make Royal Caribbean's fee petition fraudulent or subject to Rule 11 sanctions.

Further, Forman's work was entirely reliant on the work of the team of Dr. Höhn, Dr. Whelley, and Dr. Tiago. Raffa's work was also entirely reliant on the evaluations done by the retained experts since he was merely crunching numbers from Forman's report. Dr. Höhn testified at deposition that the team worked collaboratively on the evaluations, and those evaluations were sent to and relied upon by nearly every other expert in Plaintiffs' case. These evaluations form the basis for Plaintiffs' claims. Plaintiffs' position that Royal Caribbean should only be allowed to bill for work directly related to Dr. Whelley and Dr. Tiago is untenable and runs counter to the Court's Order. The fact that Royal Caribbean took care to redact unrelated billing entries is proof that Royal Caribbean exercised billing judgment before submitting its bills to the Court. The testimony of Plaintiffs' counsel and Plaintiffs' own self-selected experts is proof that Royal Caribbean exercised reasonable billing judgment and only submitted bills to the Court that arose out of the involvement of Dr. Whelley and Dr. Tiago. Further, numerous time entries relating to discovery hearings, continuances, and the like were the result of Drs. Tiago and Whelley. These entries are related to their substitution.

For instance, the time entries from July 2017 to February 2018 led up to the ultimate withdrawal of Dr. Tiago and Dr. Whelley. During this time, Royal Caribbean was still trying to obtain discovery from Plaintiffs relating to Dr. Tiago and Dr. Whelley and from the doctors

themselves.  Meanwhile, Plaintiffs' life care planning expert and economist experts were relying on Dr. Tiago and Dr. Whelley's reports.  Likewise, Royal Caribbean's expert, Dr. Tierney, was assessing their reports and working with Royal Caribbean to rebut their opinions.  Because there are 22 plaintiffs and these are the principal expert witnesses in the case, a lot of work was done in this regard.  There were also Rule 7.1 conferences, correspondence, pleadings, and other documents relating to the court proceedings to compel and obtain documents from Dr. Tiago and Dr. Whelley.  There was also Plaintiff's request to substitute them.  The time entries claimed during that period related to those various tasks.

The time entries from February 2018 to November 2018 dealt with The Second R&R [ECF No. 208] and the Order adopting it [ECF No. 222]. These Orders related to this fee issue. There were related objections and briefing that was done. Additionally, Royal Caribbean had to get additional records from and re-depose Forman because of the substitution of expert witnesses.  Royal Caribbean was also attempting to get documents from the removed witnesses, Dr. Tiago and Dr. Whelley, pursuant to previously issued subpoenas duces tecum.  Royal Caribbean had to work with its expert, Dr. Tierney to address the change in experts.  Trial strategy likewise had to be changed.

The motion to continue was filed by Plaintiffs because of their withdrawal of Dr. Whelley and Dr. Tiago.  All of that work was necessitated by Plaintiffs' withdrawal of them. It should be pointed out that Royal Caribbean is not seeking fees and costs for deposing Plaintiff's replacement expert, Dr. Lubit.  Instead, Royal Caribbean is seeking fees and costs relating to work done in relation to the withdrawn experts and the legal work to try to compel their compliance with discovery, including the related briefing and court hearings. Plaintiffs' claim that Royal Caribbean's fee request should be sanctioned is absurd.

**9.      Plaintiffs should be sanctioned for filing their frivolous motion.**

Plaintiffs are the ones that should be sanctioned for wasting this Court's and Royal Caribbean's time with their motion. They have needlessly and unreasonably multiplied these proceedings to everyone's detriment.

Section 1927 states:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally

19

the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

18 U.S.C. §1927.

"[A]n attorney multiplies proceedings 'unreasonably and vexatiously' within the meaning of the statute only when the attorney's conduct is so egregious that it is 'tantamount to bad faith.'" *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007) (quoting *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991)). Section 1927 applies to cases where objectionable conduct of counsel results in multiplication of the proceedings. *Spolter v. Suntrust Bank*, 403 F. App'x 387 (11th Cir. 2010) (sanctions appropriate after counsel filed multiple, successive motions). Sanctions motions pursuant to section 1927 are not subject to Rule 11's safe-harbor provisions. *Ridder v. City of Springfield*, 109 F.3d 288 (6th Cir. 1997).

## Conclusion

Plaintiffs' motion is a blatant attempt to paint Royal Caribbean in a false light on the eve of the prior trial setting and require it to spend time and energy responding to same. Their motion put forward no realistic basis for sanctions. Their motion is procedurally deficient. Plaintiffs' motion combined Rule 11 sanctions with discovery sanctions, was filed years after much of the conduct occurred, or after motions were fully briefed or ruled upon. Their motion is substantively without merit as none of Royal Caribbean's conduct was sanctionable. This Court should deny Plaintiffs' motion and sanction them for filing it.

## S.D. Fla. L.R. 7.1 Certification

The undersigned conferred with opposing counsel in a good faith effort to resolve the issues raised in this motion, but was unable to do so.

[Intentionally left blank signature on next page]

CASE NO.: 16-cv-20924-MARTINEZ/GOODMAN

Respectfully submitted,

MASE MEBANE & BRIGGS, P.A.
*Attorneys for Defendant*
2601 South Bayshore Drive, Suite 800
Miami, Florida  33133
Telephone:  (305) 377-3770
Facsimile:   (305) 377-0080


By:    /s/ *Cameron W. Eubanks*
         CURTIS J. MASE
         Florida Bar No. 478083
         cmase@maselaw.com
         THOMAS A. BRIGGS
         Florida Bar No. 663034
         tbriggs@maselaw.com
         CAMERON W. EUBANKS
         Florida Bar No. 85865
         ceubanks@maselaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2019, I electronically filed the foregoing document with the Clerk to the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.


                              /s/ *Cameron W. Eubanks*
                              CAMERON W. EUBANKS

CASE NO.: 16-cv-20924-MARTINEZ/GOODMAN

## SERVICE LIST

**DONNA INCARDONE,** *et al.* **v. ROYAL CARIBBEAN CRUISES, LTD.**
**Case No.: 16-cv-20924-MARTINEZ/GOODMAN**

**John B. Ostrow, Esq.**
**Morgan P. Theodore, Esq.**
JOHN B. OSTROW, P.A.
777 Brickell Avenue, Suite 400
Miami, FL 33131
Tel: (305) 358-1496
Jostrow@bellsouth.net
JBOassist@gmail.com
Morgantheodoreesq@gmail.com
yaymicelcheung@gmail.com
*Attorneys for Plaintiff*

and

**Alan C. Trachtman, Esq.**
LAW OFFICE OF ALAN C. TRACHTMAN
48 Wall Street, 11th Floor
New York, NY 10005
Tel: (212) 918-4750
act@traxlaw.com
*Attorneys for Plaintiff*

18907/#5267