UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 16-cv-20924-MARTINEZ/GOODMAN

DONNA INCARDONE, *et al.*,

    Plaintiffs,

vs.

ROYAL CARIBBEAN CRUISES, LTD.,

    Defendant.
    _____/

# DEFENDANT'S RESPONSE IN OPPOSITION TO AMENDED SPOLIATION MOTION ON CCTV AND VDR

Defendant, Royal Caribbean Cruises, Ltd., responds to Plaintiffs' amended spoliation motion, and states:

## Introduction

Plaintiffs amended their spoliation motion, but nothing substantively changed. There is still no basis for sanctions. Royal Caribbean preserved closed-circuit television video ("CCTV") and the voyage data recording system ("VDR") following this cruise. Royal Caribbean then produced that information to Plaintiffs. Plaintiffs do not dispute this. Instead, they claim they are entitled to even more information. As outlined below, Plaintiffs' amended spoliation motion is meritless, and must be denied.

## Background

Plaintiffs take issue with the VDR although the information Royal Caribbean had was produced to Plaintiffs. The VDR is essentially the ship's "black box." The VDR system collects data from various sensors onboard the vessel and then stores the information in an externally-

mounted protective storage unit designed to withstand a catastrophic marine incident. The VDR is not monitored. [ECF No. 276-4 (Depo. 11)]. The VDR is not an investigative tool and not used for investigative purposes. [ECF No. 276-4 (Depo. 12)]. The VDR is useful in case of the total loss of a vessel. [ECF NO. 276-4 (Depo. 12)]. The device is not user-friendly and not easy to extract data from. [ECF No. 276-4 (Depo. 12)].

The VDR was preserved and saved after the cruise, but, for unexplained reasons, Royal Caribbean could only extract certain portions of voice recordings from the VDR. [ECF No. 276-4 (Depo. 30-31)]. The only readable data was portions of the voice recording. [ECF No. 276-4 (Depo. 31)]. Royal Caribbean's personnel spent weeks trying to recover additional data from the VDR, but they were unsuccessful in doing so. [ECF No. 276-4 (Depo. p. 31)]. Royal Caribbean enlisted the help of the VDR's manufacturer, SAM Electronics, but that company could not recover any additional data either. [ECF NO. 276-4 (Depo. 32)]. As far as Royal Caribbean is aware, there are no companies that periodically check or audit VDR performance. [ECF No. 276-4 (Depo. 55)].

Further, counsel for Royal Caribbean sought to put Plaintiffs' counsel in touch with the manufacturer to see if they could potentially extract more information from the VDR or maybe fix the issues with the VDR. This occurred during a November 2017 transcribed Rule 7.1 conferral conference on discovery issues. [ECF No. 276-2 (Depo. 23)]. Plaintiffs' counsel never took Royal Caribbean's counsel up on its offer, and as far as Royal Caribbean is aware, Plaintiffs made no effort to try and extract additional data from the VDR.

Turning to the CCTV, a separate system from the VDR, Royal Caribbean produced multiple clips totaling nearly 30 minutes to Plaintiffs. [ECF No. 276-3 (Depo. 55)]. Plaintiff contends that additional CCTV footage would have shown the ship experiencing the high winds

and waves. Those types of images are what is depicted on the 30 minutes of video footage that was produced to Plaintiffs. The footage depicts the ship's bow being struck by waves, the ship's exterior being buffeted by high winds, and portions of the ship's exterior sustaining damage as a result of the winds and waves. Much of the produced footage is dramatic. Despite this, Plaintiffs contend that Royal Caribbean should have preserved every minute of footage from every camera on the ship for the entire cruise.

There was no decision to preserve "all" CCTV on the vessel, and there was no indication at the time that all footage was necessary to be preserved; Plaintiffs seriously misconstrue the deposition testimony from the Captain and Royal Caribbean employees. There is no missing CCTV that Plaintiffs do not possess. No Plaintiff was physically injured as a result of this cruise, and there was no discrete "incident" to preserve CCTV for. CCTV is preserved by the security department. [ECF No. 276-3 (Depo. 44)]. Security is instructed to secure relevant CCTV footage. [ECF No. 276-4 (Depo. 45)]. The captain was not aware whether every piece of data was fully captured. [ECF No. 276-3 (Depo. 51)]. And the CCTV does not record audio. [ECF No. 276-3 (Depo. 56)].

Footage the Captain reviewed is the same footage that was provided to Plaintiffs. Captain Andersen was deposed over the course of two days in multiple cases ongoing at the time, including this one, relating to this cruise. Captain Andersen testified that he watched CCTV of wave heights from the waves hitting the bow of the vessel. [ECF No. 276-1 (Depo. 113-14)]. He said he saw "just short video clips" a "few minutes" long of the weather and superficial damage to the vessel. [ECF No. 276-1 (Depo. 115)]. The Captain saw a few "snippets" of the weather conditions so he could confirm same with Royal Caribbean shoreside personnel. [ECF No. 276-1 (Depo. 113-15)].

Gerry Ellis, Royal Caribbean's former director of maritime safety, similarly testified he only reviewed "footage of the center images of the waves over the bow, hitting the windows." [ECF No. 276-4 (Depo. 44)]. He testified that the entire CCTV from the ship would not have been preserved because it is "a huge amount of data." [ECF No. 276-4 (Depo. 44)]. Plaintiffs have the relevant CCTV, and this issue has been briefed now multiple times. There was no duty or decision to preserve all the CCTV on the vessel. Plaintiffs have the preserved video.

## Memorandum of Law

I.  **Plaintiffs are not entitled to spoliation sanctions under the Eleventh Circuit's previous articulation of the bad faith standard.**

The Eleventh Circuit has not specifically addressed whether Rule 37(e) completely controls this issue, so Royal Caribbean has included the prior case law from its original response as well. *ML Healthcare Servs., LLC v. Publix Super Markets, Inc.*, 881 F.3d 1293, 1308 (11th Cir. 2018). Litigants do not have a duty to preserve any and all evidence, but only that which is potentially relevant. *Point Blank Solutions, Inc. v. Toyobo Am., Inc.*, 2011 WL 1456029, *12 (S.D. Fla. Apr. 5, 2011). Spoliation is the intentional destruction, mutilation, alteration, or concealment of such evidence. *Walter v. Carnival Corp.*, 2010 WL 2927962, *2 (S.D. Fla. July 23, 2010). The party seeking a spoliation sanction must prove: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed, (2) that the records were destroyed with a culpable state of mind and (3) that the destroyed evidence was crucial to the party's claim or defense *Id*.

In the Eleventh Circuit, the party seeking an adverse inference based on spoliation of evidence must additionally demonstrate bad faith on the part of the litigant that failed to preserve the evidence. *Point Blank Solutions, Inc. v. Toyobo Am., Inc*., 2011 WL 1456029, *1 (S.D. Fla. Apr. 15, 2011). Unlike some other circuits, evidence tending to show ordinary negligence, gross

negligence, or willful misconduct short of bad faith in the spoliation of evidence is insufficient to allow an adverse inference in the Eleventh Circuit. *See id*. Bad faith is found where the party purposefully loses, tampers, or destroys relevant evidence. *Walter v. Carnival Corp.*, 2010 WL 2927962 (S.D. Fla. July 23, 2010).

If direct evidence of bad faith is unavailable, the following constitutes circumstantial evidence of bad faith: "(1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator." *Managed Care*, 736 F. Supp. 2d at 1323 (quoting *Walter*, 2010 WL 2927962 at *2). In the Eleventh Circuit, "bad faith may be found on circumstantial evidence where all of the [four] hallmarks are present[.]" *Calixto v. Watson Bowman Acme Corp.*, 2008 WL 3823390, *16 (S.D. Fla. Nov. 16, 2009). One of the requirements for a finding of circumstantial bad faith is that the affirmative act causing the loss cannot be credibly explained as *not* involving bad faith by the reason proffered by the spoliator. *See Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, 736 F. Supp.2d 1317, 1323 (S.D. Fla. 2010) (emphasis added). Generally, destruction of evidence under routine procedures does not indicate bad faith. *See, e.g., Vick,* 514 F.2d at 737. Additionally, courts applying Florida law have held that systematic and routine elimination of electronic data in the ordinary course does not constitute bad faith. *See, e.g., Managed Care,* 736 F. Supp. 2d at 1322.

Plaintiffs centrally rely on *Long v. Celebrity Cruises, Inc.*, 2013 WL 12092088 (S.D. Fla. 2013). That case is completely different than this one. That case involved a slip-and-fall, and the

parties disputed whether the passenger missed a step. The ship's security failed to save the one portion of CCTV that caught the passenger's fall. The cruise line then made the missing CCTV crucial to the case by trying to introduce testimony that its crewmembers that watched the video thought it exonerated the cruise line. *Id*. at *5. The video was essentially "outcome-determinative." *Id*. The court held that bad faith was present since the crewmembers recklessly failed to save the video. *Id*. at *7. The first crewmember could not download the video, delegated the matter to a subordinate, then "simply let the matter drop." *Id*. This case is unlike *Long*.

Instead, this case is similar to *Mitchell v. Royal Caribbean Cruises, Ltd.*, 2013 WL 12066018 (S.D. Fla. May 7, 2013), where spoliation sanctions were denied. The *Mitchell* passenger tripped on a gangway leading off the cruise ship. She contended that the cruise line spoliated surveillance footage by only preserving the portion of the tape involving her specific accident. *Id*. at *1. The remainder of the video from that day and from the rest of the cruise was recorded over as per the cruise line's retention policy. *Id*. The passenger claimed that the cruise line should have retained footage from the gangway for the entire day of her fall. *Id*. She argued this was relevant to establish prior notice of an issue with the gangway and would allow her to rebut the cruise line's potential argument that thousands of other passengers walked on the gangway without issue. *Id*.

The court denied that spoliation occurred or that sanctions were appropriate. *Id*. at *2. It held there was no authority for the proposition a cruise line had to preserve an entire day's worth of CCTV footage, an assumption it deemed "a rather dubious one in most cases." *Id*. There was no evidence that the cruise line acted with a culpable state of mind where it already preserved a relevant segment of the CCTV for the passenger in litigation. *Id*. And the passenger could not show how the added footage would have been crucial to her case or that she was unfairly

prejudiced as a result. *Id.*; *see also Rowe v. Albertson's, Inc.*, 178 F. App'x 859, 861 (10th Cir. 2006) (denying spoliation sanctions where recycled videotape did not show patron's fall or the liquid on the floor).

As an initial matter, Plaintiffs cannot prove that Royal Caribbean even had a duty to preserve additional, gratuitous CCTV. Royal Caribbean preserved footage of the winds and waves impacting the ship during the storm; the footage Plaintiffs would presumably want to use at trial. Plaintiffs have this CCTV already. Plaintiffs and the other passengers were ordered to their cabins during the height of the storm. There is no CCTV in each room with Plaintiffs so there is no footage showing each of the Plaintiffs. This is not like a slip-and-fall case where there is a discrete and isolated incident that could be captured on CCTV. And there was no reason for Royal Caribbean to preserve CCTV from all over the ship not showing the Plaintiffs or the storm conditions. This footage was irrelevant.

Further, there is zero evidence of bad faith on Royal Caribbean's part regarding either the CCTV or the VDR. Royal Caribbean preserved the VDR following the incident. Unfortunately, the data could not be extracted beyond a few segments of voice recordings. This was not on purpose and was no one's fault. Royal Caribbean tried to extract the data from the device over the course of weeks along with the manufacturer, but could not get additional data. Royal Caribbean tried to put Plaintiffs in touch with the VDR's manufacturer although they chose not to accept the offer. This conduct is the opposite of bad faith.

Similarly, there is no bad faith on Royal Caribbean's part regarding the CCTV. No one was physically injured as a result of the cruise, and there were no specific accidents or incidents to capture. Royal Caribbean produced numerous CCTV video clips to Plaintiffs showing the relevant wind, wave, and weather conditions during the storm. It is unclear why Royal Caribbean

would have kept additional CCTV. Plaintiffs contend that all the CCTV from the over 200 cameras on the ship should have been turned over in discovery, totaling more than 14,400 hours of video. This confirms the ridiculousness of Plaintiffs' position and their motion. It would take one person nearly two years of continually watching CCTV footage to watch all the footage that Plaintiffs contend should have been produced in this case. Not only is all this CCTV irrelevant, but it is not feasible to store same since it is a huge amount of data.

Plaintiffs' spoliation motion also fails because it does not explain how the VDR or more CCTV were crucial to their case. In meeting the requirement to demonstrate that the spoliated evidence was crucial to the movant's ability to prove its *prima facie* case or defense, it is not enough for the movant to show only that the spoliated evidence would have been relevant to a claim or defense. *See Managed Care*, 736 F. Supp.2d at 1327-28 (finding that the allegedly spoliated evidence was not crucial to the plaintiff's claims because it could still prove its case through other evidence already obtained elsewhere). Where the party can still prove its case through other, already-obtained evidence, the missing evidence is not crucial and spoliation sanctions are unwarranted. *Id*.

Plaintiffs claim that the data could have shown when the ship corrected or changed course or when certain meetings took place regarding the voyage and weather. In reality, Plaintiffs are claiming that this information may, in some way, impeach the Captain's deposition testimony. This is not remotely crucial to Plaintiffs' claims. First, the CCTV does not record audio, and the VDR was preserved although it was difficult to extract from. Second, Plaintiffs have already received all this information from other sources in discovery. Royal Caribbean provided Plaintiffs with a trove of information on the weather, the ship's course, projected course, and the meetings on the weather.

For example, Royal Caribbean produced Bon Voyage maps that show the ship's exact position and course overlayed onto the then-current weather forecast from the ship's computer system. Royal Caribbean produced the weather forecasts including the NOAA High Seas and Surface forecasts. It produced the deck and engineering logs showing the ship's precise location during the cruise. It produced the enging activity log. It produced the heavy weather log. Royal Caribbean produced the pre-departure checklist, a heavy weather checklist, and the voyage plan. It produced the master's hand-over notes. The captain was also deposed over the course of two days. Plaintiffs had the opportunity to take other depositions, but they chose not to. Plaintiffs' claim that additional CCTV or the VDR are needed here ring hollow. This evidence is not crucial to Plaintiffs' claims.

This Court must deny Plaintiffs' spoliation motion. Royal Caribbean preserved relevant CCTV and the VDR although only some data could be extracted from it. There was no bad faith by Royal Caribbean at all. Plaintiffs also completely fail to show how this information was crucial to them. And their requested sanction is disconnected from what they allege occurred. In sum, this Court must deny their motion.

## II.     Plaintiffs are not entitled to spoliation sanctions under Rule 37(e).

This Court sought additional briefing regarding the application of Rule 37(e)—concerning electronically-stored information ("ESI")—in relation to Plaintiffs' spoliation motion as to closed-circuit television ("CCTV") and the voyage data recorder ("VDR"). As outlined below, Plaintiff is not entitled to any sanctions under Rule 37(e).

Rule 37 (e) provides that:

"[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon a finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>> (A) presume that the lost information was unfavorable to the party;
>>
>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>>
>> (C) dismiss the action or enter a default judgment.

The Rule 37(e) analysis concerns the following questions:

> (1) Does the alleged spoliation involve ESI?
>
> (2) Was the allegedly spoliated ESI evidence that should have been preserved?
>
> (3) Was the allegedly spoliated ESI lost because a party failed to take reasonable steps to preserve it?
>
> (4) Is the allegedly spoliated ESI evidence that cannot be restored or replaced through additional discovery?

*Living Color Enters., Inc. v. New Era Aquaculture, Ltd.*, 2016 WL 1105297, *4-5 (S.D. Fla. Mar. 22, 2016). Only if the answer to every question is "yes," and only then, can a court consider sanctions. Then court must find "prejudice" under (e)(1) or "intent to deprive" under (e)(2). *Id*.

"Rule 37(e) 'now governs a district court's power to sanction a party for spoliation of electronically stored information.'" *Sosa*, 2018 WL 6335178, at *9 (quoting *Wooden v. Barringer*, No. 3:16-CV-446-MCR-GRJ, 2017 WL 5140518, at *3 (N.D. Fla. Nov. 6, 2017)). Further, "Rule 37(e) 'forecloses reliance on inherent authority to impose sanctions for spoliation.'" *Id.* (quoting *Wooden*, 2017 WL 5140518, at *4).

**(1) Does the alleged spoliation involve ESI?**

Yes, probably. The Federal Rules of Civil Procedure do not define ESI. "However, the advisory committee's notes to Rule 37 broadly discuss ESI as covering all current types of

computer-based information that are not in tangible form." *Sosa v. Carnival Corp.*, No. 18-20957-CIV, 2018 WL 6335178, at *10 (S.D. Fla. Dec. 4, 2018), *reconsideration denied*, No. 18-20957-CIV, 2019 WL 330865 (S.D. Fla. Jan. 25, 2019) (citing Fed. R. Civ. P. 37 advisory committee's note to 2006 amendment).

In *Sosa*, this Court held that CCTV constituted ESI. *Sosa*, 2018 WL 6335178 at *2. The only court that the undersigned found to consider the issue held that the VDR data also was ESI. *Marquette Transp. Co. Gulf Island, LLC v. Chembulk Westport M/V*, 2016 WL 930946, *2 (E.D. La. Mar. 11, 2016).

**(2) Was the allegedly spoliated ESI evidence that should have been preserved?**

No. The duty to preserve extends to what the corporation "knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003). "And even when litigation is reasonably foreseeable, "[a] corporation under a duty to preserve is not required to keep every shred of paper, every e-mail or electronic document, and every backup tape. . . . In essence, the duty to preserve evidence extends to those employees likely to have relevant information—the key players in the case, and applies to unique, relevant evidence that might be useful to the adversary." *Ala. Aircraft Indus., Inc. v. Boeing Co.*, 319 F.R.D. 730, 740-41 (N.D. Ala. 2017) (quoting *In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 299 F.R.D. 502, 517-18 (S.D. W. Va. 2014)). Litigants do not have a duty to preserve any and all evidence, but only that which is potentially relevant. *Point Blank Solutions, Inc. v. Toyobo Am., Inc.*, 2011 WL 1456029, *12 (S.D. Fla. Apr. 5, 2011).

Royal Caribbean had no duty to preserve the entirety of the ship's CCTV. *See Mitchell v. v. Royal Caribbean Cruises, Ltd.*, 2013 WL 12066018 (S.D. Fla. May 7, 2013) (holding there was no authority for the proposition a cruise line had to preserve an entire day's worth of CCTV footage, an assumption it deemed "a rather dubious one in most cases."). Royal Caribbean preserved the relevant CCTV footage of the waves, wind, and weather conditions impacting the ship. There was no reason for Royal Caribbean to preserve every second of footage from the over 200 cameras on its ship. Plaintiffs' spoliation motion improperly contends that Rule 26 requires parties to "produc[e]" everything in their possession[.]" [ECF No. 309]. This is not, and had never been, the rules regarding discovery.

There was no duty to preserve the VDR either. The VDR is not a discovery or investigative tool. It is the ship's "black box," intended to provide some information if it can be found in case of the total loss or sinking of the cruise ship. The ship, of course, was not in any danger of being lost so it is unclear why Royal Caribbean would have a duty to extract and preserve the data from the ship's VDR. Indeed, in *Marquette*, the court analyzed ESI spoliation sanctions for VDR data after the vessel in question flooded and capsized. *Marquette*, 2016 WL 930946 at *1. Finding that a cruise line has a duty to preserve and extract VDR data in personal injury cases like this one is bad policy and exceeds any duty to preserve evidence required under the Federal Rules.

**(3) Was the allegedly spoliated ESI lost because a party failed to take reasonable steps to preserve it?**

No. The advisory committee's notes regarding Rule 37(e) "help inform the realistic, practical assessment of the third factor (*i.e.*, whether the party 'failed to take reasonable steps to preserve' the ESI)." *Sosa*, 2018 WL 6335178, at *15–16. The advisory committee notes acknowledge that:

- "Perfection in preserving all relevant electronically stored information is often impossible." Similarly, the rule "recognizes that 'reasonable steps' to preserve suffice; it does not call for perfection."

- The rule is "inapplicable when the loss of information occurs despite the party's reasonable steps to preserve."

- "[I]nformation the party has preserved may be destroyed by events outside the party's control -- the computer room may be flooded, a "cloud" service may fail, a malign software attack may disrupt a storage system, and so on."

*Id*. "By way of overall summary, those notes establish that ESI preservation is difficult and that the mere loss of ESI does not by itself mean that curative measures are warranted. *Id*. at *15.

This Court's prior decision in *Sosa* is different than this case and does not compel a similar result. In *Sosa*, a cruise line lost CCTV that it admitted it had a duty to preserve in a slip-and-fall case. *Id.* at *1. The CCTV was lost due to cruise line's failure to take reasonable measures to preserve same and the record was unclear on what happened to the CCTV. *Id*. The cruise line offered no explanation at all, other than conjecture, for why the CCTV was not preserved. *Id*. at *19. This Court left it to the jury to determine whether the deprivation of the CCTV was intentional based on the "fuzzy record." *Id*. at *20.

This Court's recent *Williford v. Carnival Corp.*, 17-cv-21992 [ECF No. 119] (S.D. Fla. May 28, 2019), is likewise different than this case. *Williford* involved a cruise line's inability to locate and produce an x-ray taken of the passenger onboard by the shipboard medical staff. *Id*. While the cruise line argued it did not have a duty to preserve the x-ray, this Court rejected that argument since it already anticipated litigation by claiming privilege over a post-incident accident report. This Court held that the cruise line did not take reasonable steps to preserve the x-ray because it could not explain what happened to it. *Id*. at *27.

*Sosa* and *Williford* both involve situations where evidence existed, should have been preserved, and went inexplicably missing altogether. Royal Caribbean took reasonable steps to preserve the CCTV because it did, in fact, preserve CCTV. This is not a case where an entire category of evidence went missing. Royal Caribbean produced thirty minutes of video footage to Plaintiffs depicting the ship's bow and exterior being struck by waves and high winds, and portions of the exterior of the ship sustaining damage during the storm. There were no "accidents" or "incidents" to capture on CCTV since Plaintiffs are universally claiming psychological injuries and were in their cabins for the duration of the storm. Plaintiffs received the CCTV they were supposed to get. Royal Caribbean's actions were reasonable.

Royal Caribbean preserved the VDR, but most of the data was corrupted. Only certain portions of the audio could be extracted, and they were transcribed and provided to Plaintiffs. Royal Caribbean and Plaintiff have the same information. Royal Caribbean could not extract any additional data from the VDR. The VDR manufacturer, SAM Electronics, could not extract any additional data from the VDR either. The Advisory Committee Notes specifically mention that perfect preservation is not required and that certain events, like software failure, can occur outside a party's control. Royal Caribbean took reasonable steps to preserve the VDR despite its corruption. There is no evidence that Royal Caribbean failed to take reasonable steps in this case.

**(4) Is the allegedly spoliated ESI evidence that cannot be restored or replaced through additional discovery?**

No. Plaintiffs claim that the data could have shown when the ship corrected or changed course or when certain meetings took place regarding the voyage and weather. First, the CCTV does not record audio, and the VDR was preserved although it was difficult to extract from. Second, Plaintiffs have already received all this information from other sources in discovery. Royal Caribbean provided Plaintiffs with a trove of information on the weather, the ship's

course, projected course, and the meetings on the weather. This Court in *Sosa* held that deposition testimony could not replace CCTV showing the condition of the floor on which the passenger fell since there was no other evidence to replace the video. *Sosa*, 2018 WL 6335178 at *20. This is not a slip-and-fall case with a discrete incident that could be captured via video. This case is much different since the data that was on the VDR has otherwise been replaced.

Royal Caribbean produced Bon Voyage maps showing the ship's exact position and course overlayed onto the then-current weather forecast from the ship's computer system. Royal Caribbean produced the weather forecasts including the NOAA High Seas and Surface forecasts. It produced the deck and engineering logs showing the ship's precise location during the cruise. It produced the engine activity log. It produced the heavy weather log. Royal Caribbean produced the pre-departure checklist, a heavy weather checklist, and the voyage plan. It produced the master's hand-over notes. The captain was also deposed over the course of two days.

**(5) Are sanctions under subsections (1) or (2) appropriate?**

No. The above four conditions must all be met for a spoliation sanction under Rule 37(e). *Id*. at *10 (citing *In re Abilify*, 2018 WL 4856767 at *2). Three questions, if not all four, were answered in the negative. Spoliation sanctions must be denied. *Id*. ("Rule 37(e) significantly limits a court's discretion to impose sanctions for ESI spoliations.").

Subsection (1) requires a finding of prejudice to Plaintiffs. *Id*. at *15. There is none. More CCTV would not have shown anything of value. Plaintiffs already have the VDR audio transcription that could be extracted, and they have the weather logs, forecasts, maps, and data. They can just as easily prove their claims without more VDR data.

Subsection (2) requires intentional, bad faith misconduct for the "specified and very severe" measures found within. *Id*. "The remedy should fit the wrong" and the "severe measures should not be used when the information lost was relatively unimportant or lesser measures such as those specified in subdivision (e)(1) would be sufficient to redress the loss." *Id*. at *16 (quoting Rule 37(e) Advisory Committee Notes) (internal alterations omitted). Bad faith is found where the party purposefully loses, tampers, or destroys relevant evidence. *Walter v. Carnival Corp.*, 2010 WL 2927962 (S.D. Fla. July 23, 2010).

There is no evidence that Royal Caribbean intentionally got rid of any of this evidence. Plaintiffs' motion is unsurprisingly supported only by their hyperbolic attacks and out-of-context deposition testimony. The Royal Caribbean employees testified that they reviewed the same evidence that was provided to Plaintiffs. Nothing was hidden or destroyed. There is no need for this Court to put this issue to the jury as it did in *Sosa*. This Court could not decide the issue where it was unclear how the CCTV went missing after the cruise line admitted it had a duty to preserve it, its employee reviewed it, and there was no explanation for the disappearance. The record here is clear. Allowing Plaintiffs to argue spoliation to the jury here is tantamount to a sanction in and of itself. Further, to the extent that the issue comes at trial, there is no basis to prevent Royal Caribbean from putting on witnesses to explain the issues with the CCTV and VDR. Plaintiff's amended motion also simultaneously states that Royal Caribbean should be allowed and then precluded from having such testimony, but for purposes of this response Royal Caribbean assumes Plaintiffs meant to prelude all such evidence. [ECF No. 388 p. 11]. This Court should deny Plaintiffs' sanctions motion outright. There is no basis for Rule 37(e) ESI spoliation sanctions.

CASE NO.: 16-cv-20924-JEM

Respectfully submitted,

MASE MEBANE & BRIGGS
2601 South Bayshore Drive, Suite 800
Miami, Florida 33133
Telephone: (305) 377-3770
Facsimile: (305) 377-0080

By: /s/ *Cameron Eubanks*
CURTIS J. MASE
Florida Bar No.: 478083
cmase@maselaw.com
WILLIAM R. SEITZ
Florida Bar No.: 73928
wseitz@maselaw.com
CAMERON W. EUBANKS
Florida Bar No.: 85865
ceubanks@maselaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2019, a true and correct copy of the foregoing was served by CM/ECF on all counsel or parties of record on the Service List below.

*/s/ Cameron W. Eubanks*
CAMERON W. EUBANKS

CASE NO.: 16-cv-20924-JEM

# SERVICE LIST
## DONNA INCARDONE, *et al.* v. ROYAL CARIBBEAN CRUISES, LTD.
### Case No.: 16-cv-20924-MARTINEZ/GOODMAN

**John B. Ostrow, Esq.**
**Morgan P. Theodore, Esq.**
JOHN B. OSTROW, P.A.
777 Brickell Avenue, Suite 400
Miami, FL 33131
Tel: (305) 358-1496
Jostrow@bellsouth.net
JBOassist@gmail.com
Morgantheodoreesq@gmail.com
yaymicelcheung@gmail.com
*Attorneys for Plaintiff*

and

**Alan C. Trachtman, Esq.**
LAW OFFICE OF ALAN C. TRACHTMAN
48 Wall Street, 11th Floor
New York, NY 10005
Tel: (212) 918-4750
act@traxlaw.com
*Attorneys for Plaintiff*

18907//5508