UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case Number:  16-20924-CIV-O'SULLIVAN

DONNA INCARDONE, et al.,

    Plaintiffs,

vs.

ROYAL CARIBBEAN CRUISES, LTD.,

    Defendant.
_____/

**ORDER GRANTING DEFENDANT'S MOTION IN LIMINE TO PRECLUDE
BAHAMAS MARITIME AUTHORITY REPORT AND TESTIMONY**

THIS CAUSE is before the Court upon Defendant's Memorandum of Law in Support of Defendant's Motion in Limine to Exclude the Bahamas Maritime Authority Report and Testimony, [ECF No. 482]. The Court has reviewed the Motion, Plaintiffs' Response in Opposition thereto, [ECF No. 485], the pertinent portions of the record, and is otherwise fully advised in the premises. For the following reasons, Defendant's Motion in Limine is **GRANTED**.

**I. Background**

Plaintiffs, a group of special-needs children and their families, seek compensation for the alleged injuries they sustained when their cruise on Defendant's *Anthem of the Seas* encountered a winter storm that produced hurricane-force winds. [ECF Nos. 243 at 1, 247 at 1]. Plaintiffs allege that Defendant negligently and recklessly sailed the vessel into the path of the storm despite predeparture weather warnings and a propulsion system known to fail. [ECF No. 55 ¶¶ 14–16, 27].

After the incident, a maritime investigation was conducted by the Bahamian Maritime Authority ("BMA"). The parties dispute whether the investigation was "jointly" conducted by the BMA, the National Transportation Safety Board ("NTSB"), and the United States Coast Guard

("USCG"). This investigation included interviews of various Royal Caribbean crewmembers, including Staff Captain Wendy Williams and First Navigation Officer Kyriakos Spahis. The final BMA Report was published on February 19, 2020.

Plaintiffs previously moved to preclude any findings from this investigation, including the Report. [ECF No. 266]. Though for different reasons, the Defendant agreed that the BMA Report should be excluded. [ECF No. 288]. Accordingly, because the Defendant did not oppose Plaintiffs' requested relief, the Court granted the motion. [ECF No. 442].

At this juncture, however, Plaintiffs seek to admit various interview statements taken during the course of the investigation as a carve out from the Court's previous Order. Defendant moved *in limine* to exclude the interview transcripts, arguing that they should be statutorily excluded pursuant to 46 U.S.C.A. § 6308(a). [ECF No. 370]. On February 20, 2020, the Court heard oral argument on the matter and requested further briefing from the parties.

## **II. Discussion**

Defendant asserts that the transcripts Plaintiffs seek to introduce include "findings, opinions, and conclusions" from the Report, and are therefore inadmissible under 46 U.S.C. § 6308(a). In pertinent part, the statute provides as follows:

> Notwithstanding any other provision of law, **no part of a report** of a marine casualty investigation conducted under section 6301 of this title, including findings of fact, opinions, recommendations, deliberations, or conclusions, shall be admissible as evidence or subject to discovery in any civil or administrative proceedings, other than an administrative proceeding initiated by the United States.

46 U.S.C.A. § 6308(a) (emphasis added). Such information is deemed inadmissible because "investigations of marine casualties and accidents and the determinations made are for the purpose of taking appropriate measures for promoting safety of life and property at sea, and are not intended to fix civil or criminal responsibility." 46 C.F.R. § 4.07-1(b).

Allowing Plaintiffs to admit the very statements underlying the foundation of the BMA Report circumvents the statute's purpose and disincentivizes cooperation with such investigations. In reaching this conclusion, the Court's analysis boils down to two questions. The first is paramount.

1. **Does the Report fall within the statute's purview despite BMA's lead role in the investigation?**

It does. As previously noted, the parties dispute whether the investigation was "jointly" conducted by the BMA, the NTSB, and the USCG. The Court notes, however, that throughout the course of this litigation, Plaintiffs have acknowledged that the post-voyage investigation was in fact conducted by all three entities. *See, e.g.*, Pls.' Mot. in Limine, ECF No. 266 at 1 ("After the February 6, 2014 voyage, the Bahamian Maritime Authorities, U.S. Coast Guard, and National Transportation Safety Board began an investigation into the cruise and the incident at issue in this action."). Nonetheless, the BMA Report references materials provided by the USCG and NTSB, and the interviews conducted as part of the investigation include questions from USCG and NTSB investigators, further evincing that this was indeed a joint investigation.

Though not dispositive of the issue, the statute does not limit its application to investigations conducted solely by the United States Coast Guard or to those where the Coast Guard took the lead role in the investigation. Nor do Plaintiffs provide the Court with caselaw suggesting as much.

Plaintiffs rely upon *Diamond Offshore Co. v. Survival Sys. Intern., Inc.*, for the proposition that any marine casualty investigation conducted by a foreign authority—whether or not in conjunction with the USCG or NTSB—is excepted from the statute. *See* No. H-11-1701, 2013 WL 371648, at *15 (S.D. Tex. Jan. 29, 2013). The Court disagrees. First, the holding in *Diamond Offshore* is distinguishable in that the investigative report at issue was by all indications prepared

and conducted by the Brazilian Maritime Authority *alone*. *Id.* (emphasis added). Contrary to the facts of this case, there is no indication in *Diamond Offshore* that the USCG or NTSB played any role in the investigation. The application of that case is therefore limited.

It seems both contrary to statutory intent and practical application that because the maritime authority of the vessel's flag state—here, the Bahamas—took the lead role in an investigation conducted alongside the USCG and NTSB, the participants of such investigation would no longer be afforded the statute's protection. As such, the Court finds that the BMA Report falls within the statute's purview. Having answered this initial question affirmatively, the Court next turns to the next and final question in the analysis.

## 2. Are the statements in the interview transcripts protected?

They are. The statute is clear that "**no part** of a report of a marine casualty investigation…shall be admissible or subject to discovery." 46 U.S.C.A. § 6308(a) (emphasis added). There is plenty of case law supporting this contention.

*In re Eternity Shipping* is on point. 444 F. Supp. 2d 347, 363 n.56 (D. Md. 2006). The parties there similarly disagreed as to whether interview transcripts should be statutorily excluded. The Court ruled that they should, and this Court agrees. *Id.* First, the Court noted that the language of the statute is clear that "no part of a report" shall be admissible or subject to discovery. *Id.* Accordingly, the statute's list of specifically excluded contents is "illustrative and not conclusive." *Id.* Therefore, the Court held that whether or not the transcripts mentioned any findings of fact, conclusions, or opinions, they were nevertheless inadmissible. *Id.*; *see also Falconer v. Penn Maritime, Inc.*, 397 F. Supp. 2d 68, 70 (D. Me. 2005) (finding that "possible notes of statements of the Coast Guard investigator are…clearly inadmissible").

4

In support of their position that the interview transcripts should be considered separate and apart from the BMA Report itself, Plaintiffs cite to the decision in *Guest v. Carnival Corp.*, 917 F. Supp. 2d 1242, 1246 (S.D. Fla. 2012). In the posture of a discovery dispute, the Court found that the statute did not protect internal documents that Carnival provided the Coast Guard in aid of its investigation. *Id*. Rather, it limited the statute's protection to documents and information created by the Coast Guard, finding that a litigant's own documents were subject to discovery. *Id*. The Court did not conclude, however, that interviews conducted as part of the investigation by the investigating authority—and contained within the report—are admissible.[1] Such a finding would significantly undermine the statute's purpose and the policy rationale behind such purpose.

In light of the statute's clear mandate that "no part of a report of a marine casualty investigation…shall be admissible," the interview transcripts and the statements contained therein shall be excluded.

Accordingly, it is hereby:

**ORDERED AND ADJUDGED** that

1. Defendant's Motion in Limine, [ECF No. 482], is **GRANTED.**

DONE AND ORDERED in Chambers at Miami, Florida, this **27th** day of April, 2020.

_____
JOHN J. O'SULLIVAN
CHIEF UNITED STATES MAGISTRATE JUDGE

Copies provided to:
All counsel of record

---

[1] Plaintiffs do not address whether the interview transcripts in fact contain findings of fact, conclusions, and/or opinions. If so, the transcripts are indeed subject to exclusion pursuant to the statute. *See In re Eternity Shipping*, 444 F. Supp. 2d at 363 n.56. As discussed at length in the Defendant's Reply Brief, it appears they do. *See* ECF No. 486 at 4-6.

5